UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TERESA L., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case # 1:19-CV-682-DB |
| COMMISSIONER OF SOCIAL SECURITY, | § § | MEMORANDUM DECISION AND ORDER |
| Defendant. | § § | |

## INTRODUCTION

Plaintiff Theresa L. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 15. Plaintiff also filed a reply. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED.**

## BACKGROUND

On October 16, 2015, Plaintiff protectively filed an application for SSI, alleging disability beginning January 5, 2015 (the disability onset date), due to a back injury, shoulder injury, and neck injury. Transcript ("Tr.") 141-46. Plaintiff's claim was denied initially on February 17, 2016 (Tr. 80-83), after which she requested a hearing (Tr. 84-86). On April 11, 2018, Administrative Law Judge Lynette Gohr (the "ALJ") presided over a hearing in Buffalo, New York. Tr. 10, 28-

69. Plaintiff appeared and testified at the hearing and was represented by Jeanne Murray, an attorney. Tr. 10. Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on May 22, 2018, finding that Plaintiff was not disabled. Tr. 10-23. On March 28, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's May 22, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her May 22, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since October 16, 2015, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: left knee degenerative joint disease—status post August 2015 arthroscopic surgery, left shoulder degenerative joint disease with rotator cuff tear and impingement, degenerative disc disease of the cervical, lumbar, and thoracic spine, and obesity (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b),[1] because she is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. After sitting or standing for sixty minutes, the claimant must change position for five minutes (she will be off task for those five-minute position changes). The claimant is unable to climb ladders, ropes, and scaffolds, but she is occasionally able to stoop, kneel, crouch, crawl, and climb ramps and stairs. Although the claimant is unable to reach overhead with the non-dominant left upper extremity, she is frequently able to reach in all other directions with the non-dominant left upper extremity. The claimant is frequently able to reach in all directions with the dominant right upper extremity. The claimant is able to occasionally finger and handle with the non-dominant left upper extremity;

5. The claimant is capable of performing past relevant work as a teacher's aide; this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965);

6. The claimant has not been under a disability, as defined in the Social Security Act, since October 16, 2015, the date the application was filed (20 CFR 416.920(g)).

Tr. 10-23.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on October 16, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 24.

## **ANALYSIS**

Plaintiff asserts two points of error, both of which challenge the ALJ's weighing of the medical opinion evidence. First, Plaintiff argues that the ALJ failed to provide good reasons for affording little weight to the treating source opinion of Rodrigo Castro, D.O. ("Dr. Castro"). *See* ECF No. 10-1 at 10-25. Plaintiff also takes issue with the weights assigned to the remaining medical opinions, arguing that the ALJ did not provide an adequate explanation of why she chose some parts of these opinions, and rejected others, in formulating Plaintiff's RFC. *See id.* at 15-20.

The Commissioner responds that the ALJ reasonably weighed the medical opinion evidence, including the opinions of Dr. Castro and the other opinions of record, and the Commissioner's findings in this case were supported by substantial evidence. *See* ECF No. 15-1 at 9-16. A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the extensive record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including the medical opinion evidence and other objective medical evidence, Plaintiff's mostly conservative treatment, and her fairly extensive activities of

daily living, and properly formulated Plaintiff's RFC based on the record as a whole. Accordingly, the ALJ properly concluded that Plaintiff retained the capacity to perform a range of light work.

Plaintiff sustained a work injury in January 2015, after she tripped over a wire and landed on her left knee, injuring her knee and back. Tr. 273. Graham Huckell, M.D. ("Dr. Huckell"), of Pinnacle Orthopedic & Spine Specialists ("Pinnacle Orthopedics") performed a left knee arthroscopy with partial medial meniscectomy in August 2015. Tr. 314.

On October 6, 2015, Plaintiff was seen by neurologist Alexander Rovner, M.D. ("Dr. Rovner"), for continuing pain related to her injury. Tr. 253. Dr. Rovner noted that Plaintiff exhibited L4-5 and L5-S1 radiculopathy; what appeared to be a meniscal injury on the left; cervical radiculopathy at C5-6 and C6-7; and possible left shoulder injury. Tr. 255. EMG nerve testing showed evidence of moderate degree of radiculopathy at L4, L5, and L5-S1. Tr. 256. Dr. Rovner noted that Plaintiff was doing better from the standpoint of her left knee after surgical intervention. Tr. 256. He prescribed Norco, Naproxen, and Nucinta. Tr. 256. Plaintiff continued to have left knee pain, low back pain, and worsening left shoulder pain in January 2016. Tr. 336. Plaintiff had received a steroid injection in her shoulder that did not "make much of a difference." Tr. 337. Dr. Rovner noted that Plaintiff's condition had worsened since her insurance stopped covering chiropractic care. Tr. 337, 339. Plaintiff continued treatment with Dr. Rovner through February 2017 and was prescribed Norco, Flexeril, Nucinta, Butrans patch, and Cymbalta. Tr. 2758-2842. Ultimately, Dr. Rovner referred Plaintiff for long-term pain management treatment. Tr. 2841.

Plaintiff was also treated by orthopedic surgeon Ross Sherban, D.O. ("Dr. Sherban"), of Sherban Orthopaedics and Spine Surgery, PLLC ("Sherban Orthopedics"), for pain in her neck, mid, and lower back. Tr. 427. On October 30, 2015, Plaintiff reported pain of 8/10, that was aggravated by activity. Tr. 427. Upon examination, Dr. Sherban noted that Plaintiff stood with a

forward flexed posture and ambulated with an antalgic gait, and she had moderate tenderness over the cervical, thoracic, and lumbar regions. Tr. 428. Plaintiff also had reduced range of motion secondary to pain; abnormal sensory exam on the left at L3, L5, S1, and C7; and reduced strength on the left. Tr. 429). Dr. Sherban diagnosed Plaintiff with "degenerative disease at C6-7 as well as multiple levels and thoracic spine in addition to scoliosis" and administered trigger point injections Tr. 430.

In December 2015, Plaintiff began treatment for her left shoulder injury with orthopedist A. Marc Tetro, M.D. ("Dr. Tetro"), of Pinnacle Orthopedics. Tr. 441. Dr. Tetro diagnosed Plaintiff with left shoulder rotator cuff tendinitis/impingement syndrome; left shoulder partial thickness rotator cuff tear; left shoulder post traumatic AC joint arthrosis; and cervical origin of pain. Tr. 443. He opined that Plaintiff is able to work in a restricted light duty capacity with restrictions in repetitive overhead reaching or lifting with the left arm and no lifting over ten pounds with the left arm. Tr. 445.

On February 5, 2016, Donna Miller, D.O. ("Dr. Miller"), conducted a consultative internal medicine examination at the request of the agency. Tr. 519. Dr. Miller opined that Plaintiff had mild to moderate limitation for heavy lifting, bending, carrying, reaching, pushing, and pulling. Tr. 522.

On April 19, 2016, Plaintiff underwent an independent medical examination performed by Robert Bauer, M.D. ("Dr. Bauer"). Tr. 2682. Dr. Bauer diagnosed Plaintiff with thoracic strain; lumbar disc degeneration/herniation; radiculopathy; left shoulder impingement with possible tear; and left torn medial meniscus with arthroscopic surgery. Tr. 2685. He opined that Plaintiff could return to work with restrictions allowing her an occasional five-pound weightlifting restriction; she should refrain from any crawling, kneeling, running, repetitive pushing, pulling, or overhead

lifting with the left arm and shoulder; and she should refrain from any repetitive twisting, turning, or bending with her lumbar spine and torso. Tr. 2686.

On April 27, 2016, Plaintiff underwent an independent medical examination ("IME") with pain management specialist John Orsini, M.D. ("Dr. Orsini"). Tr. 2648. Dr. Orsini assessed Plaintiff with left knee contusion, lumbar strain injury, and onset of neck pain not causally related to Plaintiff's work injury. Tr. 2652. He opined that Plaintiff has a mild degree of disability and stated, "I think work duties are possible with lifting limited to 40 pounds, and the need to sit or stand somewhat limited, one hour maximum, requiring 5-minute break, total of 4 hours per day, standing or walking." Tr. 2652.

In June 2017, Dr. Bauer opined in another IME report that Plaintiff could: work with restrictions, allowing her an occasional five-pound weightlifting restriction. Tr. 2146. He stated she should also refrain from any lengthy walking, repetitive stair climbing, crawling, kneeling, running; any repetitive pushing, pulling, overhead lifting left arm and shoulder; and any repetitive twisting, turning, bending with her cervical spine, lumbar spine; and she should change her positions frequently for comfort. *Id*.

From March 2017 to August 2017, Plaintiff was treated by Dr. Castro for ongoing symptoms related to her work injury. Tr. 529, 578-603. Although Dr. Castro is associated with Sherban Orthopedics, the office letterhead indicates he is board certified by the American Academy of Family Physicians. Tr. 529. Plaintiff reported that pain in her neck, lower back, and left shoulder had been getting progressively worse. Tr. 529. She was no longer receiving medication from Dr. Rovner, but she was receiving temporary relief from her lumbar pain with chiropractic treatment. Tr. 530. Upon examination, Plaintiff stood with a forward flexed posture and ambulated with an antalgic gait; and she had abnormal sensation on the left at L3, L5, S1, and

C7 and reduced strength on the left lower extremity. Tr. 531. Plaintiff underwent a left sided transforaminal epidural steroid injection. Tr. 533. Dr. Castro prescribed Meloxicam, Zanaflex, and Lidoderm patches. Tr. 582. Dr. Castro noted that Plaintiff was scheduled for shoulder surgery in December 2017 with Dr. Tetro. Tr. 662.

Plaintiff returned to Dr. Tetro in September 2017 and November 2017 for her left shoulder injury. Tr. 1810, 1858. He noted that Plaintiff had "persistent and recalcitrant left shoulder pain and discomfort which unfortunately has failed all forms of nonsurgical treatment. After reviewing Plaintiff's treatment options and explaining the advantages and disadvantages of various treatment modalities, Plaintiff elected to proceed with surgery. Tr. 1812-13. However, the record contains no further references to Plaintiff having shoulder surgery; thus, the record is unclear as to whether the recommended surgery was actually performed.

As noted above, Plaintiff argues that the ALJ failed to give good reasons for rejecting Dr. Castro's treating source opinion. *See* ECF No. 10-1 at 10-15. Plaintiff also argues that the ALJ failed to explain how she used the remaining opinions—specifically the opinions of Dr. Miller, Dr. Tetro, Dr. Bauer, Dr. Orsini, and Dr. Huckell—to formulate Plaintiff's RFC. *See* ECF No. 10-1 at 15-20. Plaintiff contends that because these opinions supported greater limitations than those assessed by the ALJ, the ALJ needed to better explain why she rejected the more favorable findings to formulate the RFC she did. *See id.*

As an initial matter, many of the above-referenced opinions were provided in the context of Plaintiff's workers' compensations applications. As the ALJ noted, the record contains several duplicative workers' compensation reports with ratings and assessments expressed in terms of percentage of marked partial or mild disability, temporarily impaired or disabled, unable to work, and the like. Tr. 19. The ALJ properly declined to consider these assessments because they were

based on workers' compensation rules and methodology, rather than for purposes of establishing disability under the Social Security regulations, which diminishes their relevance. *See* SSR 06-03p, 2006 WL 2329939, at *6-7.

Furthermore, these statements represent opinions on the ultimate issue of disability—an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (an opinion that "a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). However, the ALJ's decision reflects that she nevertheless considered these reports for their clinical and diagnostic findings, as well as any specific functional limitations contained therein. Tr. 18-19. In fact, the ALJ explained that she gave significant weight to the specific functional assessments outlined in the reports issued by Dr. Tetro, Dr. Bauer, Dr. Orsini, and Dr. Huckell, due to their expertise and their examinations of Plaintiff. *Id*.

With respect to Dr. Castro's August 4, 2017 workers' compensation report, the ALJ afforded minimal weight to the functional assessments outlined in the report, explaining they were internally inconsistent and inconsistent with the overall medical evidence. Tr. 20-21, 593-96, 1955-58, 1961. Plaintiff argues that the ALJ failed to properly consider Dr. Castro's opinions in light of the treating physician rule.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when

the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).[2]

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

In this case, the ALJ properly evaluated Dr. Castro's opinions in accordance with the regulations and explained her reasons for giving the opinions minimal weight. First, the ALJ explained that Dr. Castro's opinions were inconsistent with other medical opinions in the record. Tr. 20. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ may properly discount the opinion of a treating physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Burguess v. Berryhill*,

---

[2] The Court notes a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment).

The ALJ also explained that, although Dr. Castro opined that Plaintiff could only occasionally sit, stand, and walk, the other opinions in the record declined to assign any significant limitations in that regard. Tr. 20. For instance, on December 23, 2015, Dr. Tetro opined that Plaintiff could perform light duty work except that she should not repetitively reach or lift with her left arm or lift over ten pounds with her left arm. Tr. 221. The ALJ also explained that Dr. Huckell consistently found that Plaintiff had only a light duty restriction due to her knee impairment. Tr. 19-20, 1788, 2244, Tr. 2527. Furthermore, Dr. Miller opined that Plaintiff had only mild to moderate limitations with heavy lifting, bending, carrying, reaching, pushing and pulling. Tr. 522. The ALJ explained that she gave Dr. Miller's opinion "very significant weight" due to her expertise, her physical examination of Plaintiff, and the consistency of her opinions with the longitudinal medical evidence in the record, including Plaintiff's fairly good response to conservative treatment. Tr. 19.

In June 2017, Dr. Bauer opined that Plaintiff could work with restrictions to occasional five-pound weightlifting; and she should change positions frequently and refrain from lengthy walking, repetitive stairclimbing, crawling, kneeling, running, repetitive twisting, turning and bending. Tr. 2146. As the ALJ noted, Dr. Orsini assigned Plaintiff a forty-pound lifting restriction with standing and walking requirements commensurate with work at a light exertional level. Tr. 19. The ALJ considered all of these opinions and reasonably determined that Dr. Castro's opinions were outliers, and accordingly, granted them minimal weight. Tr. 18-21.

Plaintiff alleges that the ALJ's conclusion that these other opinions did not "assign any significant standing, walking, or sitting limitations" was "factually inaccurate," and therefore, the ALJ was not justified in rejecting Dr. Castro's opinion on that basis. *See* ECF No. 10-1 at 13. Plaintiff's argument is without merit. As noted above, the ALJ explained that her decision to give Dr. Castro's opinions little weight was based, in part, on their inconsistency with other opinions in the record. Tr. 19. The ALJ explained that in spite of the significant postural limitations assigned by Dr. Bauer, Dr. Orsini, and Dr. Tetro, these physicians nevertheless indicated that Plaintiff was able to work with limitations. Tr. 19, 445, 2146, 2652, 2686. Contrary to Plaintiff's argument, the ALJ's finding that these other opinions did not "assign any significant standing, walking, or sitting limitations" was reasonable. Tr. 20.

Furthermore, the ALJ did not err, as Plaintiff contends, in failing to recontact Dr. Castro to ask for a clarification of inconsistencies in his opinion and elaboration in the parts of the opinion that were not supported. *See* ECF No. 10-1 at 12-13. The ALJ had sufficient evidence here, in the extensive record, to make a decision. *See Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) ( "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (holding that an ALJ was not compelled seek further evidence when a treating source provided a medical opinion directly supporting total disability that was uncontradicted by any other medical source opinion, but was undermined by other record evidence); *Reynolds v. Colvin*, 570 F. App'x 45, 48 (2d Cir. 2014) (the ALJ was not required to recontact a doctor before discounting an unsupported opinion).

As to the challenged assignments by the ALJ of different weights to the opinions of record, where a conflict exists, the Court will defer to the ALJ's resolution of it "and accept the weight

13

assigned to the inconsistent opinions as a proper exercise of the ALJ's discretion." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (observing that, under the substantial evidence standard, the fact that the evidence may arguably be reconciled to a claimant's favor is "not probative of anything" as long as the ALJ's different interpretation was reasonable). Based on the foregoing, the Court finds nothing improper in the ALJ's analysis of the opinion evidence.

There was also nothing improper in the ALJ's formulation of Plaintiff's RFC. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

In addition, Plaintiff is ultimately responsible for providing evidence to support her claim of disability. *See* 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a) ("you must furnish medical and other evidence that we can use to reach conclusions about your medical

14

impairment(s)"); 20 C.F.R. §§ 416.912(c) ("you must provide medical evidence showing that you have an impairment(s) and how severe it is"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about h[er] medical condition, to do so."); *see also Woodmancy v. Colvin*, 577 Fed. App'x 72, 74 (2d Cir. 2014) ("A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'") (citation and quotation marks omitted).

Here, the ALJ reasonably evaluated all the relevant evidence and determined that Plaintiff retained the ability to perform a range of light work. Tr. 15-21. Upon review of the ALJ's well-reasoned decision and the entire record, the Court finds that substantial evidence supports the ALJ's RFC finding, and Plaintiff did not meet her burden of showing that a reasonable factfinder must have assessed a more restrictive RFC finding. *See Smith v. Berryhill*, 740 F. App'x at 726 ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

First, the ALJ explained that the objective medical evidence indicated that Plaintiff had some degree of restriction in her functional activities. Tr. 17, 219, 251, 567, 1173. However, the ALJ also explained that the evidence in the record showed that Plaintiff's pain and symptoms generally responded well to treatment, including knee surgery in August 2015 (prior to Plaintiff's SSI application), and subsequent conservative treatment, such as medication management, activity and dietary modifications, home exercises, physical therapy, and pain management. Tr. 17, 218. A pattern of conservative treatment weighs against complaints of disabling symptoms. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a

15

claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy). *see also* 20 C.F.R. §§ 416.929(c)(3)(iv)-(vi) (adjudicator properly considers the claimant's treatment modalities and their effectiveness);

For instance, the ALJ cited Plaintiff's January 2015 statement to her pain management specialist, Andrew Matteliano, M.D. ("Dr. Matteliano"), that her pain management regime helped her maintain her functional goals in activities of daily living. Tr. 17, 1794. The ALJ also cited an October 2015 statement from neurologist Dr. Rovner that Plaintiff was "doing better" after her left knee surgery. Tr. 17, 251. Dr. Rovner went on to recommend only conservative treatment, including chiropractic care, physical therapy, an exercise program, and pain medication. Tr. 251. Furthermore, as the ALJ noted, Plaintiff elected to pursue conservative treatment, including epidural steroid injections, with Dr. Castro in March 2017. Tr. 533. However, as the ALJ also noted, Plaintiff later declined these injections, opting instead for medication and home exercises. Tr. 17, 585. Also, as noted above, the record reflects that although Plaintiff was scheduled shoulder surgery, there is nothing to indicate that the surgery was ever performed. Tr. 662, 1812-13.

The ALJ also noted that Plaintiff's daily activities did not support her claim of disability under the Act. Tr. 17. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a

claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

In her decision, the ALJ provided a detailed explanation of Plaintiff's testimony on her activities of daily living and her statements to various providers regarding her activities of daily living. Tr. 16-17. For instance, Plaintiff testified that she shopped with her 14-year-old daughter for clothes and school supplies, washed laundry, shopped for groceries, went out to have her nails done every two weeks, engaged in a home exercise program, attended medical appointments, and went with her elderly mother to medical appointments. Tr. 16, 37-38, 41-47. The ALJ also cited a March 2016 statement from Plaintiff's mother to a medical provider, that Plaintiff "is always a busy person. She is the primary care provider for her elderly mother and has a teenage daughter." Tr. 17, 540. Thus, the ALJ's RFC finding was supported by substantial evidence, including objective medical evidence, Plaintiff's history of responding well to mostly conservative treatment, and Plaintiff's reported activities of daily living.

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record. The substantial evidence standard is "a very deferential standard of review— even more so than the 'clearly erroneous' standard," and the Commissioner's findings

of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise.")*See Brault v. Soc. Sec. Admin.*, *Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original).

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE